1  Adam B. Wolf (CA Bar No. 215914)
2  Catherine Cabalo (CA Bar No. 248198)
   Peiffer Wolf Carr Kane & Conway, LLP
3  4 Embarcadero Center, Suite 1400
   San Francisco, CA 94111
4  Telephone: 415.766.3592
   Facsimile: 415.402.0058
5  Email: awolf@peifferwolf.com
6          ccabalo@peifferwolf.com

7  Kathryn L. Tucker (WA Bar No. 15881)*
   Emerge Law Group
8  621 SW Morrison St Ste 900
   Portland, OR 97205-3823
9  Telephone: 206.595.0097
10 Email: kathryn@emergelawgroup.com
   * Pro Hac Vice application forthcoming
11
12 Attorneys for Plaintiffs

13
14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16  LONNY SHAVELSON, M.D.; JANE DOE;        )  Case No.
17  SANDRA MORRIS; ROBERT                    )
    USLANDER, M.D.; GARY PASTERNAK,          )  Civil Rights
18  M.D.; & RICHARD MENDIUS, M.D.; on        )
    behalf of themselves and all others      )  CLASS ACTION COMPLAINT FOR
19  similarly situated,                      )  DECLARATORY AND INJUNCTIVE
                                             )  RELIEF
20             Plaintiffs,                   )
                                             )    1. Violation of Title II of the Americans
21                                           )       with Disabilities Act of 1990 (42
       v.                                    )       U.S.C. §§ 12101 et seq.)
22                                           )    2. Violation of California Government
                                             )       Code Section 11135
23  CALIFORNIA DEPARTMENT OF                 )    3. Violation of the California Unruh Act
    HEALTH CARE SERVICES; ROBERT             )       (Cal. Civil Code § 51 et seq.)
24  BONTA, Attorney General                  )    4. Violation of the California
    of the State of California, in his       )       Constitution (Equal Protection)
25  official capacity,                       )
                                             )
26             Defendants.                   )
                                             )
27                                           )
                                             )
28  _____     )

                Class Action Complaint for Declaratory and Injunctive Relief

Plaintiffs, on behalf of themselves and all others similarly situated, hereby file this class action complaint, and allege as follows:

## **INTRODUCTION**

1. California's End of Life Options Act ("EOLOA"), Cal. Health & Safety Code § 443 *et seq*., allows mentally competent, terminally ill adults to choose peaceful and dignified deaths. Under the EOLOA, such patients can request from their physicians prescription medication that can be ingested to achieve a peaceful death. This option is known as aid in dying ("AID") and is one type of health-care service available to terminally ill patients.

2. However, there is one group of Californians who cannot avail themselves of the benefits of this compassionate law: physically disabled individuals whose disability prevents them from self-administering the AID medication without assistance. Because the EOLOA requires patients to self-administer AID drugs *and prohibits any assistance*, patients whose disability hinders their hand strength or mobility are excluded from this State program.

3. Plaintiff-patients are mentally competent Californians with terminal illnesses that cause progressive loss of bodily function, and who want to avoid the final ravages of their illnesses by availing themselves of AID under the EOLOA, but because of their progressive illness and advancing disability, they either (1) cannot self-administer the AID medicine without assistance, or (2) will not be able to self-administer the AID medication without assistance at the time they wish to do so. For the latter group, Plaintiffs are faced with a perverse choice: act to ingest the AID medication earlier than they would like—while they retain the physical ability to do so—or else suffer a death they hope to avoid because they will lack the ability to self-administer without assistance.

4. This civil rights class action seeks to rectify the exclusion of physically disabled individuals from the EOLOA. More specifically, this lawsuit challenges the State of California's ("the State's") failure to ensure that its legislation does not discriminate against physically disabled individuals and/or provides reasonable disability accommodations required under federal and California law—specifically, the State's failure to ensure physically disabled Californians are afforded equal benefit of and access to the EOLOA.

1

5.      Plaintiff Sandra Morris is a paradigmatic example. Married with three adult children, Ms. Morris is in the advanced stages of amyotrophic lateral sclerosis ("ALS"), a progressive nervous system disease that destroys nerve cells in the brain and spinal cord, causing progressive loss of muscle control. As each day goes by, Ms. Morris loses more physical mobility. She is now entirely dependent on caregivers to meet her every need. She was advised by her doctors that ALS is invariably fatal; there is no cure.

6.      Since her diagnosis, Ms. Morris has experienced the unrelenting progress of ALS. Within two months, Ms. Morris almost surely will lack the hand strength and coordination to self-administer AID medication. She would like to avail herself of AID thereafter but would be unable to do so. Accordingly, absent judicial intervention, Ms. Morris will need to decide between ending her life sooner than she wants or suffering a torturous death she desperately wants to avoid.

7.      This complaint seeks injunctive relief requiring accommodation to access the benefits of the state law: remedying California's unlawful legislation which fails to accommodate disabled individuals like Plaintiff Morris and members of the proposed Patient Class. The State must ensure Ms. Morris and the proposed Patient Class—people with terminal illness that cause progressive physical disability, and which prevents or will prevent them from self-administering AID medications without assistance allowed by the EOLOA—are not denied the benefits of the EOLOA by reason of their disabilities. Additionally, the State must ensure the Physician Plaintiffs and the proposed class of physicians who treat patients like Plaintiff Morris are not discriminated against because of their association with physically disabled patients.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the ADA, 42 USC §§ 12101 *et seq*. The Court also has supplemental jurisdiction over the state-law causes of action arising from the same facts.

9.      Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

10. This case should be assigned to the San Francisco/Oakland Division of the Northern District of California, as the events and omissions that are the subject of this action arose in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

## PARTIES

11. Plaintiff Lonny Shavelson, M.D. is a physician who works and resides in Berkeley, California. Dr. Shavelson is Plaintiff Morris's treating physician. He would like to assist Plaintiff Morris with exercising her right to choose a peaceful and dignified death via AID, but is prohibited from doing so by the text of the statute. Dr. Shavelson has provided (and continues to provide) treatment to Ms. Morris from his office in Berkeley. Dr. Shavelson received his medical degree from the University of California, San Francisco, in 1977.

12. Dr. Shavelson includes AID in his medical practice. In his practice Dr. Shavelson has seen (and continues to see) the discriminatory aspect of the EOLOA challenged herein adversely impact dozens of patients—forcing them to choose to act sooner while physically able to do so; or to wait, and then lose the ability to access AID, thus enduring the prolonged sort of death they wished to avoid.

13. Plaintiff Jane Doe is a resident of Berkeley, California. She has advanced secondary progressive multiple sclerosis (MS). Ms. Doe holds a degree in mathematics, as well as an MBA in finance and accounting. First diagnosed with MS at age 30, in 1976, she has endured the inexorable progress of this disease for decades, retaining use of her hands and driving her wheelchair until 2005. She then lost use of her hands. Now at age 75, enrolled in hospice care, she finds the cumulative burden of suffering with this illness unbearable. She has had friends who have had strokes and seen them hooked up to tubes, dying slowly, and knows she does not want that for herself. Ms. Doe wants to be able to have someone assist her with ingesting the AID medication in light of her extreme disability. She feels pressure to act soon, while she still retains the ability to swallow.

14. Plaintiff Sandra Morris is a "physically disabled person" and a "person with a disability," within the meaning of the Americans with Disabilities Act of 1990 ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and California Government Code

Class Action Complaint for Declaratory and Injunctive Relief

§ 11135 ("Section 11135"). Ms. Morris has lost use of her legs; cannot stand or walk; has limited use of her hands and arms; requires use of a wheelchair for mobility; and requires assistance with every activity of daily living. Ms. Morris is a resident of Sierraville, California.

15. Plaintiff Morris was diagnosed with ALS in January 2018, when she was 51 years old. Since her diagnosis, she has experienced the progress of this illness. Ms. Morris wants the option of AID under the EOLOA available to her. Absent judicial intervention, the assistance prohibition will force her to (1) act to precipitate her death sooner than she otherwise would, while she still has the physical ability to do so, depriving her of some valuable time with her family and loved ones; or (2) to wait until her progressive illness will rob her of the physical ability to use AID, forcing her to endure the final ravages of this terminal illness, which she wants to avoid at all costs. Like other terminally ill Californians who qualify under the EOLOA, Ms. Morris wants to ingest the AID medications when she wants it—not beforehand. She does not want her advancing physical disability to prevent her from accessing AID.

16. According to Dr. Shavelson, if Ms. Morris loses her ability to ingest AID as her ALS symptoms progress, she imminently will be forced to endure the sort of death by suffocation she wants to avoid.

17. Plaintiff Robert Uslander, M.D. is a resident of San Diego, California. Dr. Uslander provides Integrated MD Care. Dr. Uslander includes providing AID in his medical practice. In his practice Dr. Uslander has seen the assistance prohibition in the EOLOA operate to discriminate against and adversely affect many physically disabled patients—forcing them to choose to act sooner while physically able to do so; or to wait, and then lose the ability to access AID, enduring the prolonged sort of death they wished to avoid.

18. Plaintiff Gary Pasternak, M.D., MPH, is a resident of Los Gatos, California. Dr. Pasternak is the Medical Director at Mission Hospice in San Mateo, California. He is Board certified in Internal Medicine, Hospice and Palliative Medicine, Geriatrics, and Occupational and Environmental Medicine. Dr. Pasternak graduated from University of California at San Diego School of Medicine and completed his residency training in internal medicine at University of West Virginia and University of North Carolina, Chapel Hill. He received his Master's of Public

Health from UC Berkeley. In 2007, he was ordained at the Chaplaincy Institute for Arts and Interfaith Ministries in Berkeley. Like the other Physician Plaintiffs in this case, Dr. Pasternak has seen the assistance prohibition in the EOLOA operate to discriminate against and adversely affect many of his physically disabled patients—forcing them to choose to act sooner while physically able to do so; or to wait, and then lose the ability to access AID, enduring the prolonged sort of death they wished to avoid.

19. Plaintiff Richard Mendius, M.D., is a resident of San Anselmo, California. Dr. Mendius is a neurologist with a specific interest in the diagnosis and treatment of ALS. He is also one of the leading aid-in-dying physicians in Sonoma County and has extensive aid-in-dying experience. Like the other Physician Plaintiffs in this case, Dr. Mendius has seen (and continues to see) the assistance prohibition in the EOLOA operate to discriminate against and adversely affect many of his physically disabled patients—forcing them to choose to act sooner while physically able to do so; or to wait, and then lose the ability to access AID, enduring the prolonged sort of death they wished to avoid.

20. Defendant California Department of Health Care Services ("DHCS") is the department within the State of California ("the State") charged with overseeing the EOLOA. The DHCS is an arm of the State of California, which is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents, agencies, and employees, including the California Legislature. At all relevant times, the DHCS and the State were responsible for ensuring that their actions, omissions, policies, procedures, practices, and customs—and those of their agents, agencies, and employees—comply with the laws of the United States and the State.

21. Defendant Robert Bonta is the Attorney General of the State. He is charged with criminally prosecuting anyone providing assistance to physically disabled, terminally ill patients who are unable to ingest AID medication without assistance. He is sued in his official capacity.

**BRIEF STATUTORY BACKGROUND**

22. Under the EOLOA "an adult with the capacity to make medical decisions and with a terminal disease may make a request to receive a prescription for an aid-in-dying drug,"

Class Action Complaint for Declaratory and Injunctive Relief

provided he or she is a California resident, and "has the physical and mental ability to self-administer the aid-in-dying drug." Cal. Health & Safety Code § 443.2(a).

23.     Attending physicians are protected from civil, criminal, and professional liability, but *only* to the extent they comply with the provisions of the Act. *See id.* at § 443.14 (c) ("a health care provider shall not be subject to civil, criminal, administrative . . . or other liability for participating in this part"); *See also id.* at § 443.16 (c) ("Notwithstanding any contrary provision in this section, the immunities and prohibitions on sanctions of a health care provider are solely reserved for actions of a health care provider taken pursuant to this part.")

24.     In the Act's current form, no one can assist the patient in ingesting the AID medication and be in compliance with the Act. *See id.* at § 443.14(a) (protecting individuals "present when the qualified individual self-administers the prescribed [AID] drug . . . so long as the person does not assist the qualified person in ingesting the [AID] drug.").

25.     Title II of the ADA protects disabled individuals from discrimination by public entities: "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The implementing regulations of the ADA further define discrimination by a Title II entity, including without limitation: denying disabled individuals the opportunity to participate in or benefit from an aid, benefit, or service; otherwise limiting disabled individuals in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others; utilizing criteria or methods of administration that have the effect of subjecting individuals with disabilities to discrimination; failing to make reasonable modifications in policies, practices, or procedures to accommodate disabled individuals, unless the modifications would fundamentally alter the nature of the services; and imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. *See* 28 C.F.R. § 35.130.

26.     The State discriminates against Plaintiffs Morris and Doe, as well as similarly situated Californians with terminal illnesses involving progressive loss of physical ability, by enacting the EOLOA in a way that excludes physically disabled individuals who are unable to self-administer AID medication without assistance and failing to make reasonable modifications in policies, practices, or procedures to accommodate Plaintiff Morris, Plaintiff Doe, and others like them. The State has failed to make these reasonable modifications/accommodations, even though doing so is feasible and readily achievable, and the State cannot demonstrate that making the requested modifications/accommodations would fundamentally alter the nature of the EOLOA.

27.     The State has knowingly and intentionally denied these physically disabled persons the full and equal enjoyment of its services, privileges, advantages, businesses, and accommodations. The State has engaged in this discriminatory conduct, despite the fact that its programs and services could easily be brought into compliance with the ADA and California law, and despite the fact that the State is and has been fully aware that its conduct and practices have and continue to cause harm these physically disabled individuals, including segregation and exclusion.

28.     The EOLOA has improved the well-being of Californians by providing them with the comfort of knowing that they can choose to seek medication to precipitate a peaceful death if they find themselves trapped in an unbearable dying process. The principal reasons patients choose AID are existential suffering, inability to enjoy life, and loss of autonomy. Whether or not a patient chooses to ingest the medication, the mere fact that the patient has the ability to do so—and thus control end-of-life decisions (*i.e.*, retain some measure of autonomy)—gives the patient great peace of mind.

29.     The EOLOA requires that the medication be self-administered *and forbids assistance with ingestion*. The EOLOA uses the term "ingest" throughout. This usually means the patient will drink the medication from a cup or straw, but some patients cannot consume the medication orally, and thus "ingest" the medication by pressing a plunger on a feeding tube or a

rectal tube.

30.     The prohibition on assistance with ingestion functions to prevent dying individuals with certain physical disabilities, such as Plaintiffs Morris and Doe, and members of the Plaintiff-Patient Class, from accessing AID. Patients dying of ALS and MS, for example, experience progressive loss of bodily function and integrity, losing the ability to control and/or move their bodies. In advanced ALS and/or MS, patients may retain only the ability to make eye movements.

31.     Under the EOLOA, terminally ill individuals with physical disabilities like Plaintiffs Morris and Doe are denied the option of AID because of their extreme physical disability. This denial of an option afforded to other terminally ill Californians discriminates against people with disabilities, in violation of state and federal law.

32.     The State also has discriminated against and continues to discriminate against the Physician Plaintiffs and the proposed Physician Class, based on these physicians' association with disabled individuals. Physician Plaintiffs and the proposed Physician Class are unable to provide equal care to their physically disabled patients when compared to the care they are able to provide able-bodied patients under the EOLOA. The Physician Plaintiffs and the proposed Physician Class face criminal prosecution if they attempt to provide AID to physically disabled patients who cannot self-administer the medication without assistance.

33.     In the course of their medical practices, the Physician Plaintiffs often provide care to patients dying of terminal neuromuscular diseases. These include, but are not limited to:

- ALS - amyotrophic lateral sclerosis

- MS - multiple sclerosis

- PSP - progressive supranuclear palsy

- MSA - multiple system atrophy

- Huntington's disease

- Muscular dystrophies

- Cerebral palsy

- Paralysis from strokes and brain cancers

8

- Parkinson's disease and related disorders

- Myasthenia Gravis

- SMA -- Spinal muscular atrophy

- Mitochondrial and other myopathies

- Ataxias

34. Patients with these conditions experience the progressive loss of bodily function and integrity, while remaining fully mentally intact. Because of the prohibition in the EOLOA on assistance with ingestion of the AID medication, some patients who are eligible for AID and want to achieve a peaceful death via AID are unable to do so because they do not have the physical ability to ingest without assistance. The Physician Plaintiffs currently have patients in this position, and they will have such patients in the near- and long-term future.

35. Because of this problem created by the assistance prohibition—specifically, criminal prosecution of any clinician assisting a physically disabled patient—the Physician Plaintiffs, and other clinicians like them, cannot—and do not—provide patients with these AID services. They would like to do so, and believes it is their professional responsibility to do so, but cannot unless and until this Court permits it.

36. Plaintiffs suffer continuous and ongoing/imminent discrimination. Plaintiff Morris faces the imminent harm of not being able to take advantage of the benefits of the EOLOA (and thus living a physically and emotionally painful life), or else ending life before she prefers.

37. Plaintiff Doe suffers continuous and ongoing/imminent discrimination. Plaintiff Doe is unable to take advantage of the benefits of the EOLOA without some modicum of assistance with ingesting the medication

38. The Physician Plaintiffs suffer continuous and ongoing / imminent injury by being unable to provide care to his physically disabled patients who are unable to self-administer AID medication under the EOLOA.

39. If the State would allow for accommodations to be made for physically disabled patients otherwise qualified to benefit from the EOLOA, such as Plaintiff Morris, neither they nor their physicians would suffer the injuries described herein.

40.     The State knew, or should have known, that its legislation discriminates against physically disabled Californians, violates state and federal law, and interferes with or denies access to the physically disabled. Moreover, the State has the resources—financially and otherwise—to remove these barriers and implement policy changes without much difficulty or expense and to make the EOLOA accessible to the physically disabled. To date, however, the State has failed to remove these barriers and make such changes.

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action individually and on behalf of all persons similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2).

42.     **Class Definitions.** Plaintiffs seek to represent the following two classes:

**(a)** *Patient Class.* All persons who are physically disabled (or have a medical condition that will render them physically disabled imminently); who have terminal illness that involves progressive loss of physical abilities; who are unable to self-administer prescribed medications for AID allowed under the EOLOA without assistance due to their physical disability (or imminently will be unable to self-administer prescribed medications for AID allowed under the EOLOA without assistance); and who qualify for the benefits of the EOLOA (or will qualify for the benefits of the EOLOA imminently).

**(b)** *Physician Class.* All physicians who include AID in their medical practice and provide care to patients who are members of the Patient Class.

43.     Excluded from the above-referenced class definitions are any judge assigned to hear this case, as well as the staff of any assigned judge.

44.     This action is brought as a class action and may properly be so maintained pursuant to Federal Rule of Civil Procedure 23.

45.     **Impracticability of Joinder (Numerosity).** The members of the proposed classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court. On information and belief, the number of persons in each class greatly exceeds 100 persons.

46.     **Questions of Fact and Law Common to the Class.** All members of the Patient Class have been and continue to be denied their civil rights to full and equal access to the benefits of the EOLOA because of the violations of disability nondiscrimination laws alleged herein. There are numerous questions of law and fact common to the classes, including, but not limited to, the following:

a.  Whether the State is a covered entity under Title II of the ADA, the Unruh Act, and Section 11135;

b.  Whether the State's enactment of the EOLOA violates the ADA, the Unruh Act, and Section 11135;

c.  Whether the assistance prohibition of the EOLOA violates Article 1, Section 7 of the California Constitution by infringing on the rights of members of the Patient Class, who cannot ingest the AID medications without assistance due to their physical disabilities;

d.  Whether the assistance prohibition of the EOLOA violates Article 1, Section 7 of the California Constitution by infringing on the rights of members of the Physician Class, who provide end of life care to patients who cannot ingest the AID medications without assistance due to their physical disabilities;

e.  Whether Defendants have made reasonable modifications in their policies, procedures, and practices to ensure that physically disabled individuals have full and equal access to the benefits of the EOLOA;

f.  Whether the State's failure to accommodate patients who are physically unable to self-administer AID medication without assistance under the EOLOA violates the ADA, the Unruh Act, and Section 11135;

g.  Whether Plaintiffs' requested accommodation—specifically, a limited exception to the prohibition in the EOLOA to assist an individual with ingesting AID medications when the patient is physically disabled but otherwise qualified under the EOLOA—fundamentally alters the EOLOA;

h.  Whether the Physician Plaintiffs and the proposed Physician Class are entitled to

relief under associational or third party standing; and

i.     Whether Plaintiffs and the members of the putative classes are entitled to declaratory and/or injunctive relief, and the nature of such relief.

47.     **Typicality.** The claims of the named Plaintiffs are typical of those of the classes. Plaintiffs' claims are typical of the claims of the proposed classes in the following ways: (a) Plaintiffs are members of their respective proposed classes; (b) Plaintiffs' claims arise from the same legislation enacted by the State and criminal penalties under State law; (c) Plaintiffs' claims are based on the same legal theories as those of the proposed classes and involve similar factual circumstances; (d) the injuries suffered by the named Plaintiffs are similar to the injuries suffered by the proposed class members; and (e) the relief sought herein will benefit the named Plaintiffs and all class members alike. The claims of Plaintiffs are typical of those of the proposed classes of persons who would like the benefit of the EOLOA and the physicians who treat these patients.

48.     **Adequacy.** The named Plaintiffs will fairly and adequately represent the interests of their respective classes. They have no interests adverse to the interests of other members of the proposed classes and have retained counsel who are competent and experienced in litigating complex class actions and civil rights claims, including large-scale disability rights class actions.

49.     **Federal Rule of Civil Procedure 23(b)(1).** Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the State.

50.     **Federal Rule of Civil Procedure 23(b)(2).** The State has acted and/or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

51.     Absent judicial relief that applies to the proposed classes, the State will continue in its illegal course of conduct, which will result in further damages and injuries to the Plaintiffs and the proposed classes.

# FIRST CLAIM:

## VIOLATION OF THE ADA, TITLE II, 42 USC §§ 12201 *et seq.*

### [All Plaintiffs/Classes]

52. Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

53. Effective January 26, 1992, Plaintiffs were entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131.

54. Pursuant to Title II of the ADA (42 U.S.C. § 12132), no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

55. Patient Plaintiffs Morris and Doe were at all relevant times qualified individuals with a disability as defined by the ADA.

56. Defendants were and are at all relevant times public entities covered by Title II of the ADA and its accompanying regulations.

57. Defendants have violated Title II of the ADA by discriminating against physically disabled terminally ill Californians in enacting the EOLOA without accommodation to enable access. Defendants also have failed in their responsibilities under Title II of the ADA to provide their services, programs and activities in a full and equal manner to disabled persons as described herein, including, without limitation, failing to ensure that physically disabled terminally ill patients may take advantage of the EOLOA; to provide reasonable accommodations to physically disabled terminally ill Californians; and/or to modify its programs, services and activities to make the EOLOA accessible to physically disabled terminally ill persons, including Plaintiffs Morris and Doe. As a proximate result of the Defendants' actions and omissions, Morris, Doe, and the proposed Patient Class were discriminated against in violation of Title II of

the ADA and of the regulations adopted to implement the ADA.

58. Under the implementing regulation governing "[g]eneral prohibitions against discrimination" under Title II of the ADA:

- ○ "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity," 28 C.F.R. § 35.130(a);

- ○ "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability –":

    - ▪ "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service," *id.* § 35.130(b)(1)(i); or

    - ▪ "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service," *id.* § 35.130(b)(1)(vii);

- ○ "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:"

    - ▪ "[t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability," *id.* § 35.130(b)(3)(i); or

    - ▪ "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities," *id.* § 35.130(b)(3)(ii);

- ○ "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity," *id.* § 35.130(b)(7)(i); and

- ○ "[a] public entity shall not impose or apply eligibility criteria that screen out or

tend to screen out an individual with a disability or any class of individuals with

disabilities from fully and equally enjoying any service, program, or activity,

unless such criteria can be shown to be necessary for the provision of the service,

program, or activity being offered," *id.* § 35.130(b)(8).

59.     The United States Court of Appeals for the Ninth Circuit Court has been clear that a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076-78 (9th Cir. 2002).

60.     The benefits of the EOLOA are inaccessible to physically disabled terminally ill persons whose disability precludes their self-administration without assistance of AID medications. For Ms. Morris, she imminently will be unable to achieve equal access to the benefits of the EOLOA, unless and until the State permits an accommodation for her or otherwise allows her to benefit from the EOLOA at the point that she is unable to administer AID medications without assistance.

61.     Ms. Morris intends to take advantage of the benefits of the EOLOA once her medical conditions progress to the point that she cannot self-administer AID medication. The acts of the State will cause irreparable injury imminently to Ms. Morris if not enjoined by this Court.

62.     The benefits of the EOLOA are inaccessible to physically disabled terminally ill persons whose disability precludes their self-administration without assistance of AID medications. For Ms. Doe she is unable to achieve equal access to the benefits of the EOLOA, unless and until the State permits an accommodation for her or otherwise allows her to benefit from the EOLOA as she is unable to self-administer AID medications without assistance.

63.     The Physician Plaintiffs seek relief pursuant to remedies set forth in 42 U.S.C. § 12203. They have been, and imminently will be, discriminated against in their attempts to treat patients in Ms. Morris's and/or Ms. Doe's position, and assist them with accessing the benefits of EOLOA. They have experienced specific, direct, and separate injury as a result of treating physically disabled individuals like Ms. Morris and Ms. Doe. The Physician Plaintiffs face criminal prosecution if they attempt to assist Ms. Morris, Ms. Doe, or any of their patients who

cannot self-administer AID medication without assistance.

64.     Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, Plaintiffs are entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 USC § 794a).

## SECOND CLAIM:

## VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135

### [Plaintiff Sandra Morris, Plaintiff Jane Doe, And The Patient Class]

65.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

66.     The DHCS, like the State legislature, receives financial assistance from the State of California.

67.     Ms. Morris and Ms. Doe are persons with a disability within the meaning of California Government Code section 11135.The State will imminently deny Ms. Morris and Ms. Doe full access to the benefits of its programs and activities for which the State receives financial assistance from the State of California, and unlawfully subjected Ms. Morris, Ms. Doe, and other persons with such physical disabilities to discrimination within the meaning of California Government Code section 11135(a) based on their disabilities.

68.     Ms. Morris and Ms. Doe's injuries are imminent, and they will be ongoing, so long as the State does not modify the EOLOA or provide physically disabled Californians who are otherwise eligible for the benefits of the EOLOA necessary accommodations.

## THIRD CLAIM:

## VIOLATION OF UNRUH CIVIL RIGHTS ACT, Cal. Civil Code §§ 51 *et seq.*

### [All Plaintiffs/Classes]

69.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein by reference as if separately repled hereafter.

70.     The Unruh Act, California Civil Code 51(b), provides that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

71.     The State is a business establishment within the meaning of the Unruh Act. The State is an owner and operator of a business establishment.

72.     The State violated the Unruh Act by its acts and omissions, as follows:

      A.    Failure to enact the EOLOA in a way that includes patients with physical disabilities that limit their ability to self-administer AID medication without assistance but who are otherwise eligible to the benefits of the EOLOA;

      B.    Failure to modify policies and procedures as necessary to ensure Plaintiffs full and equal access to the accommodations, advantages, facilities, privileges, and/or services of the EOLOA;

      C.    Failure to provide reasonable accommodations to patients with physical disabilities that limit their ability to self-administer AID medication without assistance but who are otherwise eligible to the benefits of the EOLOA; and

      D.    Violation of the ADA (as pled in the First Claim, *supra*), a violation of which is a violation of the Unruh Act. Cal. Civil Code § 51(f).

73.     With respect to the State's violations of the Unruh Act that are not predicated on violations of the ADA, the State's behavior was intentional: it was aware of and/or was made aware of its duties to refrain from establishing discriminatory policies and barriers that prevent persons with physical disabilities like Ms. Morris and Ms. Doe from obtaining full and equal access to the EOLOA. The State's discriminatory practices and/or policies that deny full enjoyment of its legislation like the EOLOA to persons with physical disabilities indicates actual and implied malice and conscious disregard for the rights of Ms. Morris, Ms. Doe and other similarly disabled individuals. At all times herein mentioned, the State knew, or in the exercise

of reasonable diligence should have known, that the EOLOA violated disabled access requirements and standards and had a discriminatory impact upon Plaintiffs, other persons with physical disabilities similar to plaintiffs Morris and Doe and treating physicians like the Physician Plaintiffs but the State failed to rectify the violations, and presently continues such a course of illegal conduct in maintaining barriers that discriminate against plaintiffs Ms. Morris, Doe, and similarly-situated terminally ill disabled persons, and their treating physicians like the Physician Plaintiffs. Accordingly, the State has engaged in willful affirmative misconduct in violating the Unruh Act.

74.     As of the date of the filing of this Complaint, the EOLOA has not been amended to allow Ms. Morris, Ms. Doe, and the putative Patient Class to benefit from the EOLOA. Nor has it been amended to permit the Physician Plaintiffs and the putative Physician Class to provide the appropriate and necessary care to their patients. Likewise, no accommodations have been made to allow Plaintiffs and the putative classes to avail themselves of the EOLOA. Plaintiffs' injuries are ongoing so long as the State does not modify its policies and procedures to allow Ms. Morris, Ms. Doe and other persons with physical disabilities to benefit from the EOLOA.

**FOURTH CLAIM:**

**VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION**

**Cal. Const. Art. 1 § 7**

**[All Plaintiffs/Classes]**

75.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein by reference as if separately repled hereafter.

76.     California's Constitution guarantees equal protection under the law to all persons. Cal. Const. Art. 1 § 7.

77.     Through the EOLOA assistance prohibition, otherwise qualified patients whose disability hinders their hand strength or mobility are excluded from this State program. As a

result, the EOLOA discriminates against members of the Patient Class in violation of the California Constitution.

78. The EOLOA's assistance prohibition also discriminates against members of the Physician Plaintiffs, and the class they represent, who provide end of life care to patients who cannot ingest the AID medications without assistance due to their physical disabilities, in violation of the California Constitution.

79. The EOLOA's assistance prohibition bears no rational relationship to any legitimate state interest, does not further any compelling state interest, nor is it the least restrictive means of advancing any compelling state interest.

## **PRAYER**

1. Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions regarding the alleged legal violations. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiffs and the putative classes pray for judgment and the following specific relief:

2. A declaratory judgment that the actions, omissions, and failures complained over herein violated (and continue to violate) the ADA, California Government Code, Unruh Act, and the California Constitution, insofar as the State enacted legislation that discriminates against terminally ill individuals based on physical disability; fails to make reasonable modifications in policy and practice for Plaintiffs and other similarly situated persons; and fails to modify its programs, services, and activities to make the EOLOA accessible to terminally ill, physically disabled persons.

3. An order requiring that Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:

a. Cease the unlawful acts, conditions, and practices described in this Complaint;

b. Provide reasonable accommodation within the EOLOA for persons with physical disabilities that prevent them from self-administering AID medication without assistance;

c. Ensure that terminally ill persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities of the EOLOA; and/or

d. Implement non-discriminating protocols, policies, and practices for accommodating terminally ill persons with physical disabilities within the EOLOA.

4.      Certify the requested classes, subject to any modification that the Court believes appropriate.

5.      Appoint Plaintiffs' counsel as Class Counsel.

6.      Retain jurisdiction until the Court is satisfied that the unlawful policies, practices, acts, and omissions as complained of herein no longer occur, and cannot recur.

7.      Award to Plaintiffs all reasonable attorney fees, litigation expenses, and costs of this proceeding as provided by law, including but not limited to the ADA, 42 U.S.C. § 12205; the Unruh Act, California Civil Code § 52; and "public interest" attorney fees, litigation expenses and costs pursuant to California Code of Civil Procedure § 1021.5.

8.      Grant such other and further relief as this Court may deem just and proper.


Dated: August 27, 2021                    PEIFFER WOLF CARR KANE & CONWAY, LLP

                                          By: /s/ Catherine Cabalo_____
                                              Catherine Cabalo

                                          Attorneys for Plaintiffs

Class Action Complaint for Declaratory and Injunctive Relief