UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNY SHAVELSON, M.D., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, et al., <br><br> Defendants. | Case No. 21-cv-06654-VC <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** <br><br> Re: Dkt. No. 15 |

California's End of Life Option Act gives some terminally ill people the ability to end their lives with aid-in-dying medication. Specifically, if you are likely to die within six months, you can receive a prescription for aid-in-dying medication so long as you are both mentally competent and physically able to administer the medication yourself. And if someone assists you in preparing to end your life, the Act immunizes them from criminal, civil, and professional liability. But if someone actually administers the aid-in-dying medication to you, they do not enjoy this immunity. The upshot is that if you are not physically able to administer the medication yourself at the time you wish to end your life, the Act is of no assistance to you. *See* Cal. Health & Safety Code §§ 443.2(a)(5); 443.14(a), (c); 443.16(c); 443.17(f); Cal. Penal Code § 401.

This preliminary injunction motion is brought by two people with neurodegenerative diseases.[1] Their doctors have certified that they are not likely to live past six months. One of the plaintiffs, Sandra Morris, has ALS. The other, who goes by Jane Doe for purposes of this

---

[1] The motion was originally filed as a motion for a temporary restraining order, but the parties stipulated that it be considered a motion for a preliminary injunction. A hearing was held on September 20, 2021.

litigation, has MS. Although Morris and Doe are currently able to administer the aid-in-dying medication to themselves, they will soon lose that ability. But they are not ready to end their lives. They wish to end their lives later in the six-month window, so they can spend more time with their loved ones. They contend that California's End of Life Option Act violates Title II of the federal Americans with Disabilities Act (ADA) because it discriminates against people who are physically unable to administer aid-in-dying medication but who are nonetheless able to reliably express their consent, at the time of death, to someone else administering the medication for them.[2] *See* 42 U.S.C. § 12132.

Although it likely does not matter for purposes of this motion, it's worth noting that the plaintiffs appear to have framed their ADA argument incorrectly. The plaintiffs say they are seeking a "reasonable accommodation" to ensure that they can reap the benefits of the End of Life Option Act. But the plaintiffs have identified a "systemic barrier" to participation in the program—specifically, the prohibition on participation for people who are physically unable to administer the medication themselves. In other words, the plaintiffs contend as a categorical matter that California's program has a disparate impact on people whose physical disabilities prevent them from self-administering medication. "Where a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, this type of claim is more appropriately evaluated under the disparate impact framework than the failure to reasonably accommodate framework." *Payan v. Los Angeles Community College District*, 2021 WL 3730692, at *8 (9th Cir. 2021). The question in a case like this is whether the ADA requires California to modify its program to address the disparate impact on people like the plaintiffs, or whether such a modification would "fundamentally alter" the program—in which case the ADA

---

[2] In this motion, the plaintiffs are not challenging the provision of the End of Life Option Act that prevents a terminally ill person from obtaining a prescription if they are unable to administer the medication themselves. *See* Cal. Health & Safety Code § 443.2(a)(5). They cannot challenge this provision because they have already obtained their prescriptions. The plaintiffs challenge only the provision that declines to extend immunity from criminal and civil liability to someone who administers end-of-life medication to a terminally ill person. *See id.* § 443.14.

would not require the modification the plaintiffs seek. *See id.* at *7 (quoting 28 C.F.R. § 35.130(b)(7)(i)). A fundamental alteration is a change that would "compromise[] the essential nature" of the program. *Alexander v. Choate*, 469 U.S. 287, 300 (1985).

Whether the plaintiffs should be able to wait a few months before availing themselves of the End of Life Option Act, as opposed to being forced to choose between administering aid-in-dying medication now or foregoing the option entirely, is a serious question from a moral and policy standpoint. But a plaintiff must raise serious legal questions—not just moral and policy ones—before a federal court may consider granting a preliminary injunction. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014). The plaintiffs' ADA claim does not raise a serious legal question, because it seems clear (at least on this record) that the plaintiffs are seeking a modification that would compromise the essential nature of California's program.

To be sure, the End of Life Option Act seeks to give many terminally ill people the ability to end their lives at a time of their choosing. But in drafting the Act, the Legislature balanced that objective against its goal of protecting against the possibility of someone's life being ended without their full consent. This latter goal is expressed through numerous safeguards set up to ensure that, at every stage, a person acts voluntarily. A request for a prescription may be made only by the terminally ill person themselves—not anyone acting on their behalf. Cal. Health & Safety Code § 443.2(c). The person must make two oral requests, a minimum of fifteen days apart, and a written request, all directly to their physician. *Id.* § 443.3(a). The person must sign the request in the presence of two witnesses, neither of whom can be the requester's physician, and at least one of whom must not be related to the requester. *Id.* § 443.3(b), (c). The person can revoke their request for a prescription at any time, a fact that the attending physician must remind the person before prescribing the drug. *Id.* §§ 443.4(a), 443.5(a)(6). No more than 48 hours before self-administering the drug, the person must complete a "final attestation form" declaring their intent. *Id.* § 443.11(c). The person may decline to take the drug, even after receiving it and signing the form. *Id.*

And most relevant here, the Legislature drew a clear line between assisted suicide and

euthanasia, providing that a terminally ill person cannot obtain a prescription unless they can administer the medication themselves and specifying that there is no immunity from criminal or civil liability for someone who administers the medication to a terminally ill person. These provisions reflect a legislative concern that some people may feel truly committed to ending their lives but will ultimately change their minds—for example, the person who goes so far as to climb the ledge on the Golden Gate Bridge but decides not to jump. The provisions reflect a legislative judgment that no person's life should be ended unless they are fully committed to ending it—something that may never be truly clear unless they actually perform the act. The Legislature decided, in short, to create a policy that errs on the side of full consent, even if it risks gut-wrenching results for some people who, as a result of these restrictions, will be prevented from ending their lives even when they are of sound mind and fully wish to do so.

In short, the line between assisted suicide and euthanasia is a significant one. *See Washington v. Glucksberg*, 521 U.S. 702, 732-33 (1997). It is unlikely that the ADA could be reasonably construed as requiring a state to cross the line to euthanasia merely because the state has chosen to authorize assisted suicide. Requiring the State of California to cross that line here would likely compromise the essential nature of the end-of-life program it created. The plaintiffs thus have not raised serious questions going to the merits of their ADA claim, and the motion for a preliminary injunction is, with sincere regret, denied.[3]

**IT IS SO ORDERED.**

Dated: September 20, 2021

VINCE CHHABRIA
United States District Judge

---

[3] If the plaintiffs had satisfied the first *Winter* factor, the Court would have granted the motion for a preliminary injunction. There is no question that the plaintiffs will suffer irreparable harm absent an injunction—if they wish to avail themselves of the End of Life Option Act, they must end their lives earlier within the six-month window than they otherwise could. The final two factors (which merge in a case involving a public program) cut slightly in favor of the plaintiffs as well, although it is a considerably closer question, largely for the reasons discussed at page 15 of the Attorney General's opposition brief. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).