UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNY SHAVELSON, M.D., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT BONTA, et al.,<br><br>Defendants. | Case No.  21-cv-06654-VC<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND GRANTING LEAVE TO FILE AS AMICI CURIAE**<br><br>Re: Dkt. Nos. 83, 84, 91 |

The motions to dismiss are granted, and the complaint is dismissed for lack of jurisdiction. The motion for leave to file as amici curiae is also granted.[1]

As explained in a prior ruling, the plaintiffs have narrowed their challenge to California's End of Life Option Act. *Shavelson v. Bonta*, 21-cv-06654, 2022 WL 2234973, at *6 (N.D. Cal. June 22, 2022). But their new theory is so narrow that it presents too hypothetical and conjectural an injury for the plaintiffs to have standing. *Id*.

It is surely true that people with ALS like Alex Sajkovic, the named plaintiff, are facing a terrible and unpredictable disease. Many of them, and those with similar conditions, will likely lose the ability to completely self-administer aid-in-dying medications. It seems plausible that for some of them, there will be a window where they could nevertheless at least begin to administer the medications (although the complaint's description of how these medications are administered is very limited). That window will be unpredictable. One reading of the complaint concerns a

---

[1] This order assumes the reader is familiar with the case. The plaintiffs did far more than change named plaintiffs in the Third Amended Complaint, which was filed after the motions to dismiss. The Court construes the motions to dismiss in light of the Third Amended Complaint.

situation where a terminally ill person unexpectedly finds themselves unable to complete administration. That theory of injury would require that a doctor, family member, or other person be deterred from stepping in (or would do so and then face prosecution, which, as the Attorney General and the District Attorney suggest in their respective briefs, seems highly unlikely). This scenario is simply too contingent and speculative to confer standing. *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979); *Younger v. Harris*, 401 U.S. 37, 42 (1971). And the Court cannot conceive of a way the plaintiffs could allege an injury, on this theory, that is concrete and particularized—especially given that the prior ruling put the plaintiffs on notice of exactly these jurisdictional concerns.

An alternative reading of the requested accommodation is that the assistance prohibition contained in the End of Life Option Act be set aside entirely when a patient or their physician knows or suspects *in advance* that they will not be able to completely self-administer. *See* Dkt. No. 89 at 13. The plaintiffs have not adequately alleged standing for this scenario as well: Their theory relies on a seemingly unknowable confluence of circumstances, including the progression of the patient's disease, the knowledge of the patient and doctor, and the actions of prosecutors.

It seems unlikely that that the plaintiffs could adequately allege (and ultimately demonstrate) standing under this alternative reading of the requested accommodation if given another attempt. But even if they did, the Court would dismiss the lawsuit on the merits. Setting aside the assistance prohibition would cross the sharp line drawn by the California Legislature between assisted suicide and euthanasia, and thus would fundamentally alter the nature of the program for the same basic reasons discussed in the prior ruling. *Shavelson*, 2022 WL 2234973, at *4–5. And that dismissal would be with prejudice, given the number of chances the plaintiffs have now had to state a claim.

The dismissal for lack of jurisdiction is therefore without leave to amend—it is clear by now that further amendment would be futile.

//

//

2

**IT IS SO ORDERED.**

Dated: December 7, 2022

VINCE CHHABRIA
United States District Judge